# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 12-367 |
| DOROTHY JUNE BROWN | : | |

## ORDER

And now, this ___ day of _____, 2013, upon consideration of the Defendant's Motion to Suppress Evidence, or, In the Alternative, Request for An Evidentiary Hearing, and the government's responses to that motion, it is hereby

## ORDERED

that the motion is DENIED.

_____
**HONORABLE R. BARCLAY SURRICK**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 12-367 |
| DOROTHY JUNE BROWN | : | |

**GOVERNMENT'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO
DEFENDANT DOROTHY JUNE BROWN'S MOTION TO SUPPRESS EVIDENCE
OR, IN THE ALTERNATIVE, REQUEST FOR AN EVIDENTIARY HEARING**

On July 29, 2013, defendant Dorothy June Brown filed a motion to suppress evidence obtained from the May 6, 2010 search of the administrative offices of the Brown-related schools and businesses described in the indictment, all located 124 Bryn Mawr Avenue. In the alternative, she sought "any information currently available that sets forth the process used to limit the materials seized." Specifically, the defendant claimed that the execution of the search warrant on the computer evidence was overly broad. Brown also requested an evidentiary hearing.

As set forth below, Brown is not entitled to an evidentiary hearing on the issue of how the government conducted the searches of the electronic evidence recovered during the search of 124 Bryn Mawr Avenue, which was requested in the defendant's initial motion. The defendant is likewise not entitled to an evidentiary hearing to pursue her recent unsupported speculation that: 1) showing witnesses documents that she alleges were unlawfully seized during the search of 124 Bryn Mawr Avenue caused some constitutional violation that she has not identified; and 2) unidentified privileged documents could possibly have been read by government agents during the search of the evidence recovered from 124 Bryn Mawr Avenue. To allow the defendant to pursue these unsupported allegations by requiring the investigating

agents to testify about the manner in which they conducted the search which is the subject of her motion would turn every search into a mini-trial, conducted under the assumption that the manner in which the government conducted every search was an issue. As set forth below that is not the law. The defendant should not be permitted to pursue these unsupported allegations any further absent evidence that some constitutional violation actually occurred.

**I.      Background.**

The subject of the defendant's motion is approximately 78,932 documents that were produced to the defendants on October 5, 2012. These documents were a portion of the millions of documents obtained on as a result of the search of May 6, 2010, and have been previously identified as "the government subset." The government produced these documents in a searchable format. The documents which were not produced have never been manually viewed by the government. The documents in the "the government subset" were chosen in the following manner:

    1)    Keyword searches were performed on the electronic image of the 99 media storage devices obtained during the May 6, 2010 search of 124 Bryn Mawr Avenue, which included computers and hard drives. These searches identified approximately 75,000 documents.

    2)    The electronic images of 20 thumb drives obtained from the May 6, 2010 search were manually reviewed, which resulted in the selection of approximately 1,800 documents which were identified as falling within the scope of the search warrant and relevant to the government's case.

    3)    The 131 boxes of documents obtained as result of the May 6, 2010 search were manually reviewed, which resulted in the selection of approximately 2,132 documents which were identified as falling within the scope of the search warrant and relevant to the government's case.

The government filed its response to the motion on August 14, 2013. On the

same day, the government produced to the defendants a CD containing approximately 2,938 documents, chosen by a manual review of the approximately 76,800 electronic documents described above in Numbers 1 and 2, for documents that fall within the scope of the search warrant for 124 Bryn Mawr Avenue and are relevant to the government's case.[1]

On September 6, 2013, the Court held oral argument on the motion. At the hearing, counsel for the defendant presented the government with a list of 265 documents, out of the 2,938 documents described above, that she claimed were outside of the scope of the warrant. She also, for the first time, suggested that the government may have invaded the attorney-client privilege.

For the reasons set forth in the government's initial response and below, there is no legal basis to support the defendant's motion or her request for an evidentiary hearing. For these reasons, the motion should be denied.

**II.    The Search of 124 Bryn Mawr Avenue.**

The affidavit in support of the search which is the subject of the defendant's motion set forth probable cause that Brown and others engaged in a scheme to divert school funds for their own personal benefit and obstruct the investigation by falsifying records, in violation of 18 U.S.C. §§ 371 (conspiracy), 641 (theft of government property and concerning programs receiving federal funds), and 1519 (falsification of records). The affidavit described how Brown collected millions of dollars in fees from schools she controlled, and instances in which, in response to grand jury subpoenas, Brown produced backdated and forged documents.

---

[1] The government informed the defendants at this time that it reserved the right to supplement this disclosure.

Attachment A described the materials to be seized as follows:

For the time period from January 1, 2005, to the present:

    1. All records and documents pertaining to federal grants and other federal funding administered by any federal, state, or local agency, including the United States Department of Education, the Pennsylvania Department of Education, and the School District of Philadelphia.

    2. All records and documents that reflect the receipt, use, or transfer of money or other assets belonging to Agora Cyber Charter School, Main Line Academy, Ad Prima Charter School, Planet Abacus Charter School, Laboratory Charter School, The Cynwyd Group, Main Line Academic Services, Inc, Academic Quest, LLC, and Educational Services (collectively, "The BROWN ENTITIES,") including books, receipts, ledgers, account statements, money drafts, money orders, letters of credit, cashier checks, passbooks, bank checks, accounts receivable journals, accounts payable journals, contracts, vendor files, tax records, credit card statements, travel itineraries, vehicle lease agreements, property lease agreements, insurance policies, and loan records.

    3. All correspondence that pertains to the receipt, use, or transfer of money or other assets belonging to the BROWN ENTITIES, including electronic mail, board minutes, memoranda, notes, reports, summaries, offers, inquiries, bulletins, newsletters, charts, graphs, articles, announcements, books, and audio and video recordings.

    4. All Rolodex files, appointment books, notes, calendars, diaries, and journals belonging to the BROWN ENTITIES, or their officers, employees, or contractors.

    5. All records and documents concerning vehicles owned or leased by the BROWN ENTITIES, or any of their officers, employees or contractors.

    6. All personnel records and documents for officers, employees, and contractors of the BROWN ENTITIES, including student employees, including records and documents regarding payroll, benefits, and professional development; and statements of financial interests, timesheets, applications for employment, and job descriptions.

7. All employee handbooks, manuals, or policies of the BROWN ENTITIES.

8. All records and documents relating to U.S. Post Office Boxes, private mail boxes, storage lockers, safes, and safety deposit boxes rented or owned by the BROWN ENTITIES, or their officers, employees, or contractors.

9. Computers and computer-related equipment containing the records identified in paragraphs 1 - 8 above, including any and all information, instructions, programs and/or data stored in the form of magnetic, electronic, optical or other coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes but is not limited to disks/diskettes, flash cards, cartridges, tapes, optical medium, hard disk drives, solid-state devices and any other media that are capable of storing information or data.

   a. This further includes any and all electronic devices which are capable of analyzing, creating, displaying, converting, storing, or transmitting electronic, magnetic, or optical computer impulses or data, and any manuals or software relating to such devices. These devices include but are not limited to computers, computer components, compute,.peripherals, modems, monitors, speakers, printers, scanners, cameras, cell phones, personal digital assistants (pda's), MP3 audio players, wireless devices, Universal Serial Bus (USB) devices, Firewire devices and networking equipment; and

   b. Any and all software plus the manuals or instructions relating to such software as is used by the electronic devices or media previously specified in this attachment.

Brown did not allege that the seizure of any of the items described above was not supported by probable cause.

On May 6, 2010, FBI and ED/OIG agents executed the search warrant at 124 Bryn Mawr Avenue (the administrative offices of the Brown schools and businesses), seizing over 100 boxes of documents, along with dozens of computers, thumb drives, and other media. Forensic

examiners imaged the electronic devices and media (hard drives, thumb drives, disks).

As part of the government's discovery, on October 5, 2012, all of the materials seized from 124 Bryn Mawr Avenue were made available to defendants: 22 hard drives, 51 thumb drives, 131 boxes of paper documents, and other electronic media (DVDs, disks) seized from the administrative offices of the schools referenced in the indictment. The computers and all of the other electronic devices had been returned to the schools during 2010.[2]

### III.  The Search of the Electronic Evidence Was Proper.

Brown's motion claimed that the execution of the search warrant on the electronic/computer evidence was overly broad. She is wrong. Because the government may properly peruse the computer files in the same manner employed for searches of physical files in an office, Brown's claim that the execution of the computer search in this case was overbroad is misplaced. As described above, the data seized from the Brown Entities' computers comprises literally millions of files. In conducting the initial search of the computers, the agents used forensic tools and let the computer select those files that had particular words and phrases in them and produced a government subset of approximately 76,800 documents that agents and the defense could manually review. The government, through manual review, has narrowed that universe to approximately 2,900 documents, which were identified for the defendants on August 14, 2013.

Investigators may look at every document on a computer, even if only briefly, in

---

[2] In addition to having access to the originals for several years, for over 11 months since discovery was made available, no defendant requested additional copies of the imaged storage devices. On September 10, 2013, for the first time, Brown requested copies of the 20 Chalker thumb drives. The government produced a DVD containing a copy of the original images to all defendants.

order to locate the items and information described by the warrant. See, e.g., United States v. Williams, 592 F.3d 511, 521 (4th Cir. 2010) ("[t]he warrant impliedly authorized officers to open each file on the computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization"); United States v. Burgess, 576 F.3d 1078, 1094 (10th Cir. 2009) ("in the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files"). As noted by the Tenth Circuit, "[a] computer search may be as extensive as reasonably required to locate the items described in the warrant." United States v. Grimiest, 439 F.3d 1263, 1270 (10th Cir. 2006).

It is well-settled that agents searching a home or office for documents may examine every document in order to find the materials covered by the warrant. See, e.g., United States v. Christine, 687 F.2d 749, 760 (3d Cir. 1982). The Supreme Court has explicitly stated that such conduct is necessary and unobjectionable. "In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976). Likewise, the Third Circuit held:

> [I]n searches for papers, it is certain that some innocuous documents will be at least cursorily perused in order to determine whether they are among those papers to be seized. But no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision. Nor does the Fourth Amendment prohibit seizure of an item, such as a single ledger, merely because it happens to contain other information not covered by the terms of the warrant. . . . This flexibility is especially appropriate in cases involving complex schemes spanning many years that can be uncovered only by exacting scrutiny

7

of intricate financial records.

Christine, 687 F.2d at 760.  These principles are equally applicable to searches of computers. United States v. Williams, 592 F.3d 511, 523 (4th Cir. 2010) ("we conclude that the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents").

For all of these reasons, the government's execution of the search warrant on the computer evidence was not overbroad, and Brown's motion to suppress all evidence from the search should be denied.

**IV.     Even If It Were Determined That Agents Erroneously Seized A Document During the Search of the Computers, the Remedy Is Not Suppression of All Documents Seized During the Search.**

Brown also claims that the remedy for this allegedly overbroad execution of the warrant is suppression of all computer evidence.  This is also incorrect.   Under the law, an erroneous seizure of evidence will not lead to suppression of materials which were properly seized pursuant to the warrant.  If this Court were to determine that particular items which were seized were outside the scope of the warrant, and no exception to the exclusionary rule applied, the proper remedy would be suppression of those items, not all of the evidence which was seized pursuant to the warrant.  See e.g. United States v. Coleman, 805 F.2d 474, 483 (3d Cir. 1986) (admitting properly seized materials and suppressing materials seized outside of list of authorized items); United States v. Christine, 687 F.2d 749, 754 (3d Cir.1982) (the court "need not suppress materials seized pursuant to the valid portions of the warrant");  United States v. Galpin, 2013 WL 3185299 (2d Cir. 2013) (remanding for analysis of plain view and severability).  Validly seized evidence is not subject to suppression simply because some evidence was improperly

obtained.  See also United States v. George, 975 F.2d 72, 79 (2d Cir. 1992) (only improperly seized evidence will be suppressed, properly seized evidence remains admissible); United States v. Daniels, 549 F.2d 665, 668 (9th Cir. 1977) (generally, the exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well); United States v. Artieri, 491 F.2d 440, 445-46 (2d Cir. 1974) (same); United States v. Holmes, 452 F.2d 249, 259 (7th Cir. 1971).[3]  For this reason, the defendant's argument that all electronic evidence seized during the search should be suppressed is without merit and should be rejected.

**V.     The Defendants Are Not Entitled to Evidence of or a Hearing Concerning the Keyword Searches Conducted by the Government.**

The agents in this case had all of the documents recovered during the search loaded into an electronic database.  Keyword searches were used to narrow the documents which possibly fell within the scope of the warrant from millions to approximately 78,900.  Because this was done by keyword searches, no one from the government ever viewed the majority of the electronic evidence which was recovered on May 6, 2010.

While keyword searches are useful, and were employed by agents throughout this investigation to eliminate more than a million documents from any type of review, there is no authority which requires the use of keywords to search a computer.   If the judge authorizing the search and seizure of computers can not dictate the manner in which the government conducts the search, then certainly the defendants can not do so.  In United States v. Hill, 459 F.3d 966,

---

[3] The "drastic" remedy of blanket suppression of all seized evidence is not justified unless the agent executing the warrant effected a widespread seizure of items not within the scope of the warrant and did not act in good faith. United States v. Liu, 239 F.3d 138, 140 (2d Cir.2000) (denying wholesale suppression).  Brown made no such claim here.

977 (9th Cir. 2006), the defendant challenged the search of his computer, arguing, among other things, that the warrant was invalid because "it did not include a search protocol to limit the officer's discretion as to what they could examine when searching the defendant's computer media." The court of appeals held that no search protocol was necessary. Id. at 978. The Tenth Circuit reached a similar conclusion in United States v. Brooks, 427 F.3d 1246, 1251 (10th Cir. 2005), stating that while warrants must describe "with particularity the objects of their search," the methodology used to find those objects need not be described. See also United States v. Adjani, 452 F.3d 1140, 1149-50 (9th Cir. 2006)(rejecting defendants' claim that officers were not permitted to engage in a "wholesale search of the contents of all emails," and stating that "[t]o require such a pinpointed computer search, restricting the search to an email program or to specific search terms, would likely have failed to cast a sufficiently wide net to capture the evidence sought"); United States v. Vilar, 2007 WL 1075041, at *37 (S.D.N.Y. 2007) ("while the warrant must state with particularity the materials to be seized from a computer, the warrant need not specify how the computers will be searched. This is the view of the vast majority of courts to have considered the question.").

As discussed in the government's initial response, there is no legal basis to compel production of the keywords the government used to search the computer media seized through search warrant. A similar request was previously denied in United States v. Fumo, 2007 WL 3232112 at *6 (E.D. Pa. Oct. 30, 2007)("[t]he search protocols and keywords used by the government are irrelevant to the decision whether the warrants were overbroad or the seizures exceeded the scope of the warrants"). As noted by Judge Yohn, "The decision whether to suppress a document offered as evidence in this case will depend only on the connection between

10

the document and the descriptions of documents to be seized listed in the warrants." Id. Similarly, any instructions which may have been given to the agents concerning the search of the electronic evidence are irrelevant. See United States v. Stabile, 633 F.3d 219, 240 (3d Cir. 2011)(". . . an investigator's subjective intent is not relevant to whether a search falls within the scope of a search warrant").

Therefore, the defendant's request for an evidentiary hearing to elicit testimony concerning the manner in which the government searched the electronic evidence in this case should be denied.

**VI.     The Defendant has Failed to Identify any Documents That Are Subject to Suppression.**

At the hearing on September 6, 2013, Brown's counsel provided the government with a list of 265 documents which the defendant claims fall outside the scope of the search warrant. The majority of the documents consist of lists of members of the boards of trustees of the schools founded by Brown, both before and after January 2005, and documents pertaining to student and administrative matters. Approximately 10 of the documents are blank pages. There are only a few others which do not fall within the categories described above.[4]

The government will not seek admission of any of the documents pertaining to student and administrative matters, nor any lists of members of the boards of trustees which pertain to periods which end before January 2005. The documents which list members of the

---

[4] There are also a few documents on the defendant's list which clearly fall within the scope of the warrant: QPH USB-000790 (agenda for Abacus board meeting for 2008); QPH_USB-001180 (Lab resolution dated 8/28/07 prohibiting the board from doing business with the school); QPH_USB-001243(a 1/20/05 board resolution authorizing defendant Joan Chalker to sign on behalf of for Lab - also QPH_USB-001542, which is identical); and QPH_USB-001338("unofficial minutes" dated 6/20/05, which mention the budget).

11

boards of trustees of the schools founded by Brown who allegedly served during and after January 2005, however, are not subject to suppression for a number of reasons.

First, these lists fall within the third category of items to be seized: *3. All correspondence that pertains to the receipt, use, or transfer of money or other assets belonging to the BROWN ENTITIES, including electronic mail, board minutes, memoranda, notes, reports, summaries, offers, inquiries, bulletins, newsletters, charts, graphs, articles, announcements, books, and audio and video recordings.* Because the boards of trustees had to approve of all the expenditures which are the subject of this prosecution, any document identifying members of the board of trustees falls within this category. The lists also fall within the sixth category: *6. All personnel records and documents for officers, employees, and contractors of the BROWN ENTITIES, including student employees, including records and documents regarding payroll, benefits, and professional development; and statements of financial interests, timesheets, applications for employment, and job descriptions.* Agents can seize documents identifying members of the board of trustees to determine the officer documents authorized by the category.

Second, because this information was obtained from other sources in a manner apart from the execution of the search warrant, the lists fall within the independent source doctrine, which is an exception to the exclusionary rule and "permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.' " See United States v. Stabile, 633 F.3d 219, 243 (3d Cir. 2011)(citations omitted). These independent sources, all of which identify board members for all the Brown Entities by year, include board minutes which were obtained as a result of the search and clearly fall within the scope of the warrant, as

12

category three specifically identified board minutes, IRS Forms 990, which were obtained from public sources and from the IRS by court order, annual reports submitted by the schools which were obtained from the Pennsylvania Department of Education, and records maintained by the Philadelphia School District, which included the application for the charter schools which are the subject of the prosecution.[5]

Third, the seizure of the lists for 2005 and after falls within the good-faith exception in any event. See United States v. Richards, 659 F.3d 527, 542 (6th Cir. 2011) (seizure of evidence from computer server fell within scope of good-faith exception to warrant requirement).

Finally, Brown asserted at the September 6 hearing, for the first time, that: 1) six named witnesses where shown the 265 documents allegedly outside the scope of the warrant; and 2) this disclosure somehow tainted the government's investigation. Both assertions are incorrect. The government has reviewed the interview reports and grand jury testimony of the individuals named at the hearing. None of those individuals were shown any of the 265 "QPH" documents listed on defendant Brown's September 6th disclosure. And even if those witnesses had been shown one of the 265 documents defendant erroneously claims is outside the scope of the warrant, it is the defendant's burden to demonstrate that review of a specific document that was

---

[5] For the sake of argument, if the lists were determined to be outside of the scope of the warrant, the inevitable discovery doctrine, which permits the introduction of evidence that inevitably would have been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful, would also apply here. United States v. Stabile, 633 F.3d at 243 (inevitable discovery can apply to computer searches); United States v. Larson, 1995 WL 716786, at *10-11 (D. Kan. Nov. 16, 1995) (refusing to suppress certain documents under the inevitable discovery doctrine when those documents were also obtained through grand jury subpoenas).

13

allegedly improperly seized as evidence "tainted" those witnesses. The records listed at the September 6, 2013 are predominantly lists of board members; Brown has not demonstrated that showing these documents to a witness in a non-custodial setting caused any constitutional infirmity, particularly when the government has independent sources for those records.

For all of the reasons set forth above, the defendant has not demonstrated that any documents which were seized as a result of the search of the electronic evidence recovered during the search should be suppressed.

**VII.      The Defendant Has Failed to Identify any Documents That Are Subject to Attorney - Client Privilege.**

The government has taken great care to respect the respective attorney-client privileges of individual defendants and the school entities in this investigation. *The government addressed the process to protect the attorney client privilege–and got agreement from Brown and her co-defendants-- over a year ago, in the discovery-related meetings between the parties on September 10, 2012.* Nevertheless, at the September 6, 2013 hearing on Brown's motion to suppress computer evidence, Brown speculated that the government has invaded the attorney-client privilege. Of course, a defendant can only put the government to the burden of showing that its evidence is untainted if she "goes forward with specific evidence demonstrating taint." Alderman v. United States, 394 U.S. 165, 183 (1969); see also United States v. SDI Future Health, Inc., 464 F.Supp 2d. 1027, 1055 (D.Nev., 2006) (refusing to grant an evidentiary hearing absent some showing that privileged materials had been used by the prosecution).

Brown has wholly failed to identify any documents that are subject to the attorney - client privilege. Although the defendant's original motion was filed over a month ago, the

14

defense has not provided any evidence that the government has improperly used privileged documents in the investigation or prosecution of this case. That is, for each document Brown now contends is privileged and which was produced to Brown in government discovery, she must: 1) identify the specific document; 2) the nature of the privilege; 3) the date the document was produced by the government; 4) the reason why the privilege is not waived for failing to take timely court action to enforce the privilege last year when the documents were produced; 5) how the document was improperly used; and 6) what evidence she alleges should be suppressed or excluded as a result.

As the defense is well aware, the issue of privilege review of records seized during the execution of the search warrant was addressed by the government over a year ago, in the discovery-related meetings between the parties on September 10, 2012. This process was memorialized in the government's October 5, 2012 discovery letter to Brown and counsel for all defendants:

> After the search warrants were executed, the investigative team was instructed to set aside and not to review any records that appeared to be attorney work product or legal correspondence to or from an attorney. After the "Government Subset" and seized email records were all loaded into the government's Concordance database, electronic keyword searches were conducted to remove documents that contained the names of certain attorneys and law firms. Those documents were then provided to Mr. Sendak for the privilege review.

Pursuant to the September 2012 agreed-upon protocol, Mr. Sendek made a determination of privileged and non-privileged materials, and communicated directly to defense counsel the results of his review. There is no question, therefore, that the use of the taint team

has ensured that privileged materials: 1) were not provided to the prosecution team; and 2) that the party that owns the privilege would have an opportunity to assert it. See e.g., United States v. Winters, 2006 WL 2789864 (S.D.N.Y. Sept. 27, 2006) (outlining process). We are not aware that any member of the defense has objected to Mr. Sendek's determination of privileged or non-privileged documents.

Rather, a full year after the government disclosed the privilege review process to the defense and the defense agreed about the manner to raise privilege issues, Brown speculates, for the first time, that the process was insufficient. See SDI Future Health Inc., 464 F.Supp.2d at 1055 (finding defendants' arguments regarding the deficiencies in the government's taint procedures lack merit, given defendants' failure to seek timely judicial action regarding those procedures).

It appears from Brown's claims in her correspondence that she is concerned about the manner in which agents set aside any potentially privileged documents for later review by a taint team. Of course, Brown cites no authority for the proposition that where the government seizes voluminous business records, it must first employ a taint team to review all of the records to identify potentially privileged documents. Cf. SDI Future Health Inc., 464 F.Supp.2d at 1039. Rather, it is a widely accepted and judicially approved process for agents executing a search warrant to set aside any potentially privileged documents for later review by a taint team. See, e.g., United States v. Winters, 2006 WL 2789864 (S.D.N.Y. Sept. 27, 2006); United States v. Grant, 2004 WL 1171258 (S.D.N.Y. 2004) (government conducted initial review of documents seized pursuant to search warrant and segregated documents to be reviewed by privilege team). If Brown is suggesting that agents in this case fragrantly disregarded instructions—that is, read

16

attorney work product or legal correspondence to or from an attorney completely prior to setting those records aside—it is Brown's burden to produce specific evidence to demonstrate the need for an evidentiary hearing. <u>Alderman</u>, 394 U.S. at 183; <u>SDI Future Health, Inc.</u>, 464 F.Supp 2d. at 1055. Brown's unfounded speculation fails to meet that burden.

IX.     **Conclusion**

For all of the these reasons, the government respectfully requests that the Court deny Defendant Brown's Motion to Suppress Evidence, or, In the Alternative, Request for An Evidentiary Hearing.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


JOAN E. BURNES
FRANK R. COSTELLO, Jr.
Assistant United States Attorneys

# CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing to be served via ECF upon:

Gregory P. Miller, Esq.
William M. McSwain, Esq.
Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996

*Attorneys for Defendant Dorothy June Brown*

this 24th day of September 2013.

JOAN E. BURNES
Assistant United States Attorney