**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOROTHY JUNE BROWN, et al. | Case No. 2:12-cr-00367-RBS |

# ORDER

AND NOW, this _____ day of _____, 2013, upon consideration of Defendant Dorothy June Brown's Motion for Entry of Judgment of Acquittal on Counts 13, 14, and 67 of the Superseding Indictment, and any opposition thereto, it is hereby ORDERED that the Motion is GRANTED. Judgment of acquittal is hereby entered in favor of Defendant Dorothy June Brown on Counts 13, 14, and 67 of the superseding indictment.

BY THE COURT:

_____
R. Barclay Surrick
U.S. District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOROTHY JUNE BROWN, et al. | Case No. 2:12-cr-00367-RBS |

**DEFENDANT DOROTHY JUNE BROWN'S
MOTION FOR ENTRY OF JUDGMENT OF ACQUITTAL ON
<u>COUNTS 13, 14, AND 67 OF THE SUPERSEDING INDICTMENT</u>**

      Defendant Dorothy June Brown, by and through her undersigned counsel, hereby submits this Motion for Entry of Judgment of Acquittal on Counts 13, 14, and 67 of the Superseding Indictment. Dr. Brown requests that the Court grant the Motion and enter a judgment of acquittal in favor of Dr. Brown on Counts 13, 14, and 67 of the superseding indictment. Arguments in support of the Motion are set forth in the attached Memorandum of Law.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 2, 2013 | /s/ Gregory P. Miller<br>Gregory P. Miller (PA Id. No. 24891)<br>William M. McSwain (PA Id. No. 86499)<br>DRINKER BIDDLE & REATH LLP<br>One Logan Square, Ste. 2000<br>Philadelphia, PA 19103-6996<br>(215) 988-2700<br>(215) 988-2757 Fax<br>Gregory.Miller@dbr.com<br>William.McSwain@dbr.com<br><br>*Attorneys for Defendant Dorothy June Brown* |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOROTHY JUNE BROWN, et al. | Case No. 2:12-cr-00367-RBS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOROTHY JUNE BROWN'S MOTION FOR ENTRY OF JUDGMENT OF ACQUITTAL ON COUNTS 13, 14, AND 67 OF THE SUPERSEDING INDICTMENT**

**I.      BACKGROUND**

The government has presented its case on the superseding indictment over the course of ten trial days. During that presentation, the government failed to adduce sufficient evidence to permit a reasonable jury to find Defendant Dorothy June Brown guilty beyond a reasonable doubt on several counts of the superseding indictment. In particular, the government failed to introduce sufficient evidence to support the allegations of wire fraud in Counts 13 and 14 and witness tampering in Count 67.

Counts 13 and 14 arise from the settlement of civil litigation among the Pennsylvania Department of Education ("PDE"), K12 Pennsylvania, LLC ("K12"), Agora Cyber Charter School ("Agora"), Dr. Brown, and Cynwyd Group, LLC ("Cynwyd"). The superseding indictment alleges that "[b]ased on the false representations by [Dr. Brown] and Cynwyd that the Agora [board of trustees] had previously voted to enter into" an agreement with Cynwyd, "K12 and PDE agreed to pay Cynwyd $3,000,000." Superseding Indictment, Counts 1-14 ¶ 32. Allegedly, "[a]t the time of the settlement, K12 and PDE did not know that the Agora [board of trustees] had never voted to approve the Cynwyd-Agora contract." *Id.*

Count 67 of the superseding indictment charges Dr. Brown with witness tampering in violation of 18 U.S.C. § 1512(b)(3). Specifically, the government alleges that Dr. Brown asked Doris Evans White to contact her sister, Shirley Elizabeth Kennedy, and ask Ms. Kennedy "to state falsely" that Ms. Kennedy had given Ms. Evans permission to sign Ms. Kennedy's name on a version of the AcademicQuest-Planet Abacus Charter School consulting contract. Superseding Indictment, Count 67 ¶ 5. Count 67 further charges that Dr. Brown corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward Ms. Evans by attempting to persuade Ms. Evans that she and her sister should falsely state to law enforcement officers that Ms. Kennedy had given permission for Ms. Evans to sign Ms. Kennedy's name on the consulting contract. *Id.* ¶ 6.

## II.     LEGAL STANDARDS

A criminal defendant is entitled to judgment of acquittal if, after the government has closed its presentation of evidence, there is insufficient evidence to permit a reasonably jury to find each of the essential elements of the crime charged beyond a reasonable doubt. *See United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011); Fed. R. Crim. P. 29(a). This is true whether the government did or did not present evidence on an element of the crime charged. *See Richardson*, 658 F.3d at 341 (finding insufficient evidence that defendant had knowledge of a design to conceal, in part because the government introduced no evidence that defendant participated in or was aware of certain transactions). The Court must view the evidence in the light most favorable to the government, mindful that it is the jury's province to make credibility determinations and to assign weight to the evidence. *Id.* at 337. The Court's scope of review is defined by the evidence of record, including evidence elicited during cross-examination of government witnesses, at the time the defendant moves for acquittal – even if the Court reserves

its ruling. *See id.* ("Rule 29 entitles the defendant 'to a snapshot of the evidence at the point that the court reserves its ruling.'" (quoting *United States v. Moore*, 504 F.3d 1345, 1347 (11th Cir. 2007))); *United States v. Tyson*, 653 F.3d 192, 200 (3d Cir. 2011) (noting court considers evidence elicited by cross-examination during government's case-in-chief); *see also* Fed. R. Crim. P. 29(b).

**III.   ARGUMENT**

Dr. Brown seeks judgment of acquittal on three counts of the superseding indictment – Counts 13 and 14 charging wire fraud in violation of 18 U.S.C. § 1343, and Count 67 charging witness tampering in violation of 18 U.S.C. § 1512(b)(3). The government has failed to introduce sufficient evidence to permit a reasonable jury to find each element of these offenses beyond a reasonable doubt. For that reason, judgment of acquittal is mandated.

> **A.   The Court should enter judgment of acquittal on Counts 13 and 14 because the government failed to introduce sufficient evidence of a scheme to defraud a victim of property.**

The government's theory for Counts 13 and 14 is that PDE and K12 agreed to settle ongoing litigation based on a false representation. *See* Superseding Indictment, Counts 1-14 ¶ 32. After several weeks of trial, it is clear that the government has failed to introduce sufficient, and in some cases any, evidence to support that charge, and the Court should enter judgment of acquittal on these counts. *See* Fed. R. Crim. P. 29(a).

The government must establish each of the following elements of wire fraud beyond a reasonable doubt: (1) the defendant's knowing and willful participation in a scheme to defraud, (2) with the specific intent to defraud, and (3) the use of interstate wire communications in furtherance of the scheme. *United States v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012). A scheme to "defraud" requires "wronging one in his property rights" and "signif[ies] the

- 3 -

deprivation of something of value." *McNally v. United States*, 483 U.S. 350, 358 (1987) (quotations omitted). Thus, prosecutions for mail or wire fraud are "limited in scope to the protection of property rights." *Id.* at 360; *see also Pasquantino v. United States*, 544 U.S. 349, 355 n.2 (2005) (noting mail and wire fraud statutes are construed *in pari materia*). This element also requires the government to identify a victim, *i.e.*, a person or entity who was wronged in his or her property interest. *See, e.g.*, *Cleveland v. United States*, 531 U.S. 12, 15 (2000) (holding that object of the fraud must be "property in the hands of the victim"); *McNally*, 483 U.S. at 358; *United States v. Wright*, 665 F.3d 560, 573 (3d Cir. 2012) (explaining traditional fraud "involves defrauding a private party of money or property"). Significantly, the government must establish a connection between the purported victim and the particular property at issue. *See United States v. Adler*, 186 F.3d 574, 577 & n.4 (4th Cir. 1999) ("[N]o one disputes that ownership of money is protected under section 1343; the sole question is whether [the alleged victim] had any property right in that money.").

Dr. Brown has exhaustively briefed the legal arguments that demonstrate why Counts 13 and 14 are legally infirm and is not going to repeat those arguments here. Rather, at this point of the case, after the government has had the opportunity – and the indisputable burden – to put on its case, the question is whether the government has introduced sufficient evidence to warrant submitting these counts to the jury. It has not for Counts 13 and 14.

With respect to Count 14, the government offered only one witness from K12, Kevin Corcoran. But the government did not ask Mr. Corcoran *any* questions about K12's decision to enter into the settlement agreement. In fact, Mr. Corcoran could not have offered that testimony because he was not even involved in the decision-making process:

> Q. And in 2009 are you aware that there were various civil lawsuits between parties?

> A. I was aware.
>
> Q. Were you the decision-maker for any of those suits?
>
> A. No.

Trial Tr. 40:1-6 (Nov. 14, 2013).

Count 14 could survive only if the government had called another K12 witness or decision-maker, such as Howard Polsky, K12 Inc.'s general counsel who signed the settlement agreement, or Ron Packard, K12 Inc.'s chief executive officer, to testify about how K12 was supposedly tricked into settling with Cynwyd and Dr. Brown.[1] Perhaps even Agora's head of school, Sharon Williams, could have offered this testimony. Indeed, Ms. Williams was, at one time, on the government's witness list, but she, Mr. Packard, and Mr. Polsky were not called by the government. The government simply decided not to present evidence on this critical allegation in the superseding indictment, and now must bear the consequences of that strategic decision: judgment of acquittal on Count 14.

With respect to Count 13, unlike Count 14, the government at least tried to offer evidence to support the allegations in the superseding indictment. Dr. Gerald Zahorchak, the Pennsylvania Secretary of Education at the time of the settlement agreement, testified that he would not have approved the settlement had he known that the Cynwyd-Agora contract was (as the government alleges) fraudulent:

> Q. Did you understand that Cynwyd was due the money under the contract that had been – the May 10th contract that had been attached to the complaint?
>
> A. Yes.

---

[1] K12 Inc. is the parent company of K12 Pennsylvania, LLC.

Q. Did you rely on that contract?

A. Yes.

Q. Did you rely on the representations that the board had unanimously approved that contract?

A. Yes.

. . . .

Q. Is this [Government's Exhibit 138 at 31] the management agreement that you relied upon in authorizing the payment of millions of dollars under the settlement from Agora to Cynwyd?

A. Yes.

Q. Without this management agreement, would you have released Agora's money to Cynwyd?

A. No.

Q. If the management agreement had not been approved unanimously by Agora's board of trustees on May 6, 2006, would you have released Agora's money to Cynwyd?

A. No.

*See* Trial Tr. 37:25-38:8, 40:16-41:2 (Nov. 12, 2013).

Although this testimony, on the surface, appears to support the government's allegations, it is immaterial because Dr. Zahorchak also admitted that PDE did *not* rely on any representations other than those in the settlement agreement:

Q. This agreement contains the entire agreement between and among the parties hereto, and fully supersedes any and all prior agreements or understandings pertaining to the subject matter hereof. Do you remember this section of the settlement?

A. Yes.

Q. Then it says: Every representation, warranty and covenant made prior to or contemporaneous with this agreement is merged into this agreement. Do you remember that?

> A. Yes.
>
> Q. Then there's just two more lines on the next page to finish that. And in entering into the agreement, *no party is relying on any other statement, representation or warranty*, written or oral, as inducement or consideration for entering into this agreement.
>
> A. That's correct.
>
> Q. What does that clause mean to you if you can out it into your own words?
>
> A. Well, there is nothing else that is consideration or causing us to enter the agreement.
>
> Q. You are not relying on anything else, right?
>
> A. We are not relying on anything else.
>
> Q. You are *purely relying on the agreement itself, right?*
>
> A. Correct.

*Id.* at 60:10-61:11 (emphasis added).

Further, Dr. Zahorchak admitted that PDE waived any and all claims it could have against Cynwyd or Dr. Brown:

> Q. But it says at the top you forever discharge Cynwyd, right?
>
> A. Yes.
>
> Q. If you skip down a few lines you are discharging Cynwyd of and from any and all actions, causes of action, suits, debts, charges, complaints, basically any sort of legal action you may have against them, you are discharging right?
>
> A. Correct.
>
> Q. And then a little further down a few more lines where it says, whether known or unknown, suspected or unsuspected, foreseen or unforeseen. What does that mean to you?
>
> A. *That means all*.

Q. *That means all?*

A. *That means all.*

Q. So that means – *known and unknown together mean all, right?*

A. *That is all.*

Q. Anything conceivable having to do with [Cynwyd], right?

A. Correct. Cynwyd.

. . . .

Q. And then the next paragraph M is the same language, but you are forever discharging Dr. Brown?

A. Correct.

Q. Just so everybody sees it, let's go down to any and all line, that's six lines down: any and all actions, causes of action, suits, debts, charges [instruction to technician omitted] whether known or unknown, suspected or unsuspected, foreseen or unforeseen, the same language in the previous paragraph, right?

A. Yes.

Q. *That means to you all, right?*

A. *That's correct.*

Q. *Anything you can possibly have against Dr. Brown, right?*

A. *That's correct.*

. . . .

Q. And part of the agreement, which you have already been over, is that you are waiving and discharging any and all claims against Cynwyd and Dr. Brown, known and unknown, right?

A. Right.

Q. Which means all, right?

A. Yes.

*Id.* at 58:14-60:6, 61:12-18 (emphasis added).

Dr. Zahorchak's unequivocal testimony clarifies any ambiguity in the meaning of the terms of the settlement agreement: PDE relied *only* on the terms of the settlement agreement to settle the litigation and released all claims against Cynwyd and Dr. Brown. It did not – and could not – have relied on any representations outside the settlement agreement. Thus, PDE had no remaining property interest in the alleged fraud proceeds after the settlement agreement and after PDE received the benefit of its bargain with Cynwyd and Dr. Brown. There can be no scheme to defraud a victim of property absent a cognizable property interest. *See Cleveland*, 531 U.S. at 15; *McNally*, 483 U.S. at 358; *Wright*, 665 F.3d at 573; *Adler*, 186 F.3d at 577 & n.4.

For the foregoing reasons, the government has failed to adduce sufficient evidence of an essential element of wire fraud, *i.e.*, a scheme to defraud a victim of property. Therefore, no reasonable jury could find beyond a reasonable doubt that Dr. Brown committed the wire fraud alleged in Counts 13 and 14, and the Court should enter judgment of acquittal on those counts.

> **B.** **The Court should enter judgment of acquittal on Count 67 because the government failed to introduce sufficient evidence that Dr. Brown corruptly persuaded or engaged in misleading conduct toward Doris Evans White, and failed to introduce sufficient evidence that Dr. Brown acted with the requisite intent.**

To establish the charge of witness tampering in violation of 18 U.S.C. § 1512(b)(3), the government must show that: (1) Dr. Brown knowingly corruptly persuaded Doris Evans White, or attempted to do so, or engaged in misleading conduct toward Ms. Evans; (2) Dr. Brown acted knowingly, dishonestly, and with intent to hinder, delay, or prevent Ms. Evans from communicating to law enforcement authorities information relating to the commission or possible commission of an offense; (3) there was a reasonable likelihood that at least one of the communications targeted by Dr. Brown would have been made to a federal officer; and (4) the

information that would have been communicated related to the possible commission of a federal offense.  *See* Third Circuit Model Criminal Jury Instruction 6.18.1512B-1.

A defendant corruptly persuades if she persuades another person to violate a legal duty, to accomplish an unlawful end or unlawful result, or to accomplish some otherwise lawful end or lawful result in an unlawful manner.  *See United States v. Davis*, 183 F.3d 231, 249 (3d Cir. 1999).  Indeed, "an individual can 'persuade' another not to disclose information to a law enforcement official with the intent of hindering an investigation without violating the statute, *i.e.*, without doing so 'corruptly.'"  *United States v. Farrell*, 126 F.3d 484, 489 (3d Cir. 1997) (finding "more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure"); *see Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005) (determining the phrase "knowingly corruptly persuaded" requires consciousness of wrongdoing).  "Misleading conduct" is defined as:

> (A) knowingly making a false statement;
> (B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement;
> (C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;
> (D) with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or
> (E) knowingly using a trick, scheme, or device with intent to mislead.

18 U.S.C. § 1515(a)(3).

The government has failed to introduce evidence that Dr. Brown corruptly persuaded, attempted to corruptly persuade, or engaged in misleading conduct toward Ms. Evans.  Nor is there any evidence that Dr. Brown intended to hinder, delay, or prevent Ms. Evans from communicating information to law enforcement authorities.

According to the superseding indictment, Dr. Brown allegedly attempted to persuade Ms. Evans to falsely state that Ms. Evans's sister had given Ms. Evans permission to sign her sister's name to the AcademicQuest-Planet Abacus Charter School contract. Superseding Indictment, Count 67 ¶¶ 5, 6. No such evidence appeared at trial. Ms. Evans's testimony on this subject was as follows:

> Q. And then Dr. Brown asked you about the contract?
>
> A. Yes.
>
> Q. What did she say?
>
> A. And when I mentioned –
>
> Q. First, what did Dr. Brown say to you about the contract?
>
> A. Oh. She said, now, what about these names. I said well, it's my aunt and my sister's names that are on this contract.
>
> Q. And how did Dr. Brown respond?
>
> A. Well, in regard to my aunt, when I told her – because she asked if I could get in touch or if either of them – with either of them or both of them and see if they would give me permission to use their names. When I mentioned my aunt, I said, well, she died two years ago and…
>
> Q. Well, first did you tell you [sic] her that she died?
>
> A. At that particular time.
>
> Q. And after you told her that your aunt had passed away, how did Dr. Brown respond?
>
> A. Well, she said, we don't have to worry about her.
>
> Q. And then did you tell her when your aunt had died?
>
> A. Yes.
>
> Q. And how did she respond?
>
> A. And she was pretty upset. She said, oh, my god, or something like that.

Q. Now, what did Dr. Brown say to you about your sister?

A. She asked me if I could – if I thought that my sister would help me out. And I said, I wouldn't ask her. I wouldn't involve her.

Q. How did Dr. Brown respond when you said you would not ask her?

A. Well, she left that topic. And we spoke about the 8th graders and the schools that they were deciding upon. And then before I left, she came back to that topic and asked again.

Q. What did she ask you again?

A. She asked again if I could get in touch with my sister and see if she would help.

Q. And how would your sister help? What did Dr. Brown ask you to do?

A. Well, she asked if I could get her permission to say that I had her permission to sign at the time that I did.

Q. Okay. And how did you respond?

A. And I just responded again that I wouldn't involve her.

Q. During the – did you and Dr. Brown have discussions about coming in to the government for interviews?

A. Yes.

Q. And did Dr. Brown give you any advice as to how to handle those interviews?

A. Well, just to go down and tell the truth and to take my three little friends with me, I don't know, I don't remember, I don't recall.

Q. And did she say both of those things at the same time? Tell the truth and bring your three little friends?

A. Yes.

Trial Tr. 148:24-151:13 (Nov. 14, 2013).

At no point during this testimony did Ms. Evans even suggest that Dr. Brown asked her to make any false statements to law enforcement as alleged in the superseding indictment. Rather, Dr. Brown asked Ms. Evans if she would be willing to contact her sister, and Ms. Evans declined. *See id.* at 150:3-25. According to Ms. Evans's testimony, statements to law enforcement did not even come up during the discussion with Dr. Brown about the signatures. There simply is no evidence that Dr. Brown attempted to persuade Ms. Evans to do or say anything to law enforcement officials. Nor is there any evidence that Dr. Brown ever spoke with or attempted to persuade Ms. Evans's sister, Ms. Kennedy. *See* Trial Tr. 29:19-32:17 (Nov. 26, 2013).

Further, Ms. Evans's testimony that Dr. Brown told her to "tell the truth and to take my three little friends with me, I don't know, I don't remember, and I don't recall," is not corrupt persuasion. *See* Trial Tr. 151:5-17 (Nov. 14, 2013). Dr. Brown advised Ms. Evans to tell the truth, and confirmed that advice by advising her not to make up anything. In the event Ms. Evans did not recall, remember, or know something, then Dr. Brown advised her that she should tell the truth – *i.e.*, she did not recall, remember, or know.

Even if the Court takes a dimmer view of Dr. Brown's advice, Ms. Evans's testimony still would not arise to evidence of *corrupt* persuasion necessary to establish witness tampering in violation of 18 U.S.C. § 1512(b)(3). Even assuming the worst, Dr. Brown's alleged advice to Ms. Evans to take her "three little friends" amounts to nothing more than "attempting to discourage disclosure," if even that. *See Farrell*, 126 F.3d at 489; *see also Davis*, 183 F.3d at 248 ("Simply interfering with the flow of information to the government is not enough to constitute witness tampering.").

Standing alone, attempting to discourage disclosure does not establish corrupt persuasion or an attempt to do so; indeed, Ms. Evans's testimony reveals that Dr. Brown never instructed her to lie or make a false statement and never attempted to coerce Ms. Evans at all. *See United States v. Hull*, 456 F.3d 133, 142 (3d Cir. 2006) (noting that simply encouraging witness not to aid federal investigators is beyond § 1512(b)'s purview); *United States v. Silas*, 81 F. App'x 758, 760 (3d Cir. 2003) (stating that advising witness of right to attorney and right against self-incrimination does not violate § 1512(b)(3); conduct must be coupled with an attempt to bribe witness to withhold information or to persuade witness to lie or provide a false statement).[2] Further, there is no evidence that Dr. Brown made false statements to Ms. Evans, attempted to mislead Ms. Evans by omitting information, or used any tricks or schemes with the intent to mislead. *See* 18 U.S.C. § 1515(a)(3). Accordingly, there is insufficient evidence to support the charge in Count 67 of the superseding indictment and the Court should enter judgment of acquittal.

---

[2] If the Court finds that Dr. Brown's advice – tell the truth and bring the "three little friends" – is evidence of witness tampering, the government's evidence would nonetheless constitute a material variance from the superseding indictment, warranting dismissal. *See United States v. Ford*, 618 F. Supp. 2d 368, 380 (E.D. Pa. 2009) ("Variances occur when the charging terms are unchanged, 'but the evidence at trial proves facts materially different from those alleged in the indictment.'" (quoting *United States v. McKee*, 506 F.3d 225, 231 n.7 (3d Cir. 2007))). Here, the superseding indictment alleges that Dr. Brown implored Ms. Evans to falsely state that her sister had granted her permission; the evidence at trial, however, was that Dr. Brown provided *advice* to Ms. Evans. Changing the basis for the charge at trial precluded the grand jury from exercising its own judgment and significantly prejudiced Dr. Brown's ability to prepare her defense, which was based on different allegations and a different theory of the crime. *See United States v. Schurr*, 775 F.2d 549, 553-54 (3d Cir. 1985). The variance also exposes Dr. Brown to the risk of double jeopardy in a subsequent prosecution because the government charged different conduct than it introduced at trial. *See id.*

## IV. CONCLUSION

For the foregoing reasons, Defendant Dorothy June Brown respectfully requests that the Court enter judgment of acquittal on Counts 13, 14, and 67 of the superseding indictment.

Respectfully submitted,

Dated: December 2, 2013

/s/ Gregory P. Miller
Gregory P. Miller (PA Id. No. 24891)
William M. McSwain (PA Id. No. 86499)
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2700
(215) 988-2757 Fax
Gregory.Miller@dbr.com
William.McSwain@dbr.com

*Attorneys for Defendant Dorothy June Brown*

## CERTIFICATE OF SERVICE

I, Todd N. Hutchison, hereby certify that on this day I caused a true and correct copy of the foregoing Motion for Entry of Judgment of Acquittal on Counts 13, 14, and 67 of the Superseding Indictment to be filed electronically, and to be thereby served upon counsel listed below:

Joan E. Burnes, Esq.
Frank R. Costello, Esq.
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

*Counsel for United States of America*

| | |
|---|---|
| Andrew Bellwoar, Esq. | Thomas Bellwoar, Esq. |
| Siana, Bellwoar & McAndrew LLP | Luongo Bellwoar LLP |
| Ludwigs Corner Professional Center | 213 W. Miner Street |
| 941 Pottstown Pike, Suite 200 | West Chester, PA 19382 |
| Chester Springs, PA 19425 | |

*Counsel for Defendant Michael A. Slade, Jr.*

Robert J. Donatoni, Esq.
Robert J. Donatoni & Associates, P.C.
The National Penn Bank Building
200 North High Street, Suite 301
West Chester, PA 19380

*Counsel for Defendant Courteney L. Knight*


Dated: December 2, 2013                 /s/ Todd N. Hutchison
                                        Todd N. Hutchison