**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 12-367** |
| | : | |
| **DOROTHY JUNE BROWN** | : | |

**GOVERNMENT'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW REGARDING
THE COMPETENCY OF THE DEFENDANT TO STAND TRIAL**

The United States of America hereby submits proposed findings of fact and conclusions of law with respect to the issue of the defendant's competency to stand trial. The factual findings are based on the testimony and evidence offered to the Court during hearings that occurred on January 28, 29 and 30, 2015.

For the reasons set forth below, the government submits that the evidence proves, by a preponderance, that the defendant is competent to stand trial.

## I.  PROPOSED FINDINGS OF FACT

### A.  Background

1.   The indictment in this case was filed in July 2012; it was superseded in January 2013.

2.   The first 37 counts of the indictment, which allege mail and wire fraud, charge that from approximately November 2005 through April 2011, defendant Dorothy June Brown participated in a scheme to defraud two Philadelphia charter schools out of more than $6.3 million. The two schools, the Agora Cyber Charter School and the Planet Abacus Charter School, were founded by Brown.

3.     The Board of Trustees of Agora Cyber Charter School allegedly entered into a contract in May 2006 employing The Cynwyd Group, the defendant's for-profit company, to manage Agora.  Cynwyd was paid approximately $5.6 million pursuant to the Agora-Cynwyd contract.

4.     Beginning in November 2007, AcademicQuest, the defendant's for-profit company, collected more than $700,000 in management fees pursuant to an AcademicQuest – Planet Abacus contract that had allegedly been approved by the Board of Trustees of Planet Abacus.

5.     Brown is charged in Count 53 with conspiring to obstruct justice from at least August 2008 through April 2012.  The object of the conspiracy is the alteration and falsification of records, which was carried out following the issuance of federal grand jury subpoenas pursuant to investigations of entities affiliated with Brown, which included The Cynwyd Group, AcademicQuest, Agora, and Planet Abacus.  The primary allegation of Count 53 is that the defendant and others fabricated contracts and minutes that had been backdated to make it falsely appear as if the Agora Board had approved a contract with The Cynwyd Group, and the Planet Abacus Board had approved a contract with AcademicQuest, when, in fact, neither board had approved the contracts.  The majority of the documents which are the subject of the conspiracy to obstruct justice pertain to the frauds charged in Counts 1 through 37.

6.   Defendant Brown has been represented by her defense attorney since 2008.  This included the inception of the criminal investigation, responding to subpoenas, and representation during a search warrant executed at Brown's schools' offices. Prior to the first trial, defense counsel received discovery from the government and filed motions to dismiss and motions to suppress on behalf of Brown, which were denied by this Court.

7. The trial of this case took 26 days. Fifty-nine witnesses testified and hundreds of exhibits were introduced into evidence.

8. At the conclusion of the trial, the jury was unable to reach unanimous verdicts on Counts 1-37 (the Agora and Abacus frauds) and other fraud counts (Counts 46-52), and Count 53 (conspiracy to obstruct justice), and other obstruction counts (Counts 54-58, 61-63, and 65).

9. Counts 42 – 45 (wire fraud) were dismissed at the government's request during trial. Counts 38-41 (wire fraud), 59 (obstruction of justice), and 67 (witness tampering) were the subjects of not-guilty verdicts. After the trial, Counts 46-52 (wire fraud) and Counts 56, 63 and 65 (obstruction of justice) were dismissed on the motion of the government.

10. The defendant filed a motion for judgment of acquittal on all of the remaining counts. On July 31, 2014, this Court denied the defendant's motion.

11. By order dated April 14, 2014, the Court set a trial date for September 8, 2014.

12. On September 2, 2014, counsel for the defendant filed a motion for a competency hearing. The government did not oppose the defendant's request.

**B. Competency Hearing**

**1. <u>Defense Expert Stephen Mechanick, M.D., Found Defendant Brown Not Competent To Stand Trial</u>**

13. Dr. Mechanick, a psychiatrist, examined Brown on August 29, 2014, and prepared a report at the request of defense counsel. *See* Court Exhibit 9 (August 30, 2014 Report of Dr. Mechanick); Tr. 1/28/15 at p. 19.

14. Dr. Mechanick's examination included a telephone conference between the defendant, Dr. Mechanick, Gregory Miller, and Todd Hutchison concerning what they had told the defendant about her case. Mechanick Report at p. 1; Tr. 1/28/2015 at p. 12-13.

15.  Dr. Mechanick said that the defendant was "pleasant and cooperative" during the examination, that she showed "reasonable social judgment" and did not display any "unusual behavior." Mechanick Report at p.10; Tr. 1/28/2015 at p. 32.

16.  The defendant had some difficulty recalling personal information, such as the exact year she was married and the age of her daughter.  Mechanick Report at p. 2-5.

17.  Dr. Mechanick administered the Mini Mental State Exam (MMSE).  The defendant's score was 17, which is in the upper end of the range of moderate cognitive impairment.  Mechanick Report at 11; Tr. 1/28/2015 at p. 8-11.

18.  Based on his examination of the defendant, his review of her medical records and Dr. Malamut's report, Dr. Mechanick opined that the defendant has mild to moderate cognitive impairment, which likely represented the early stage of some type of dementia.  Mechanick Report at p. 11.

19.  Dr. Mechanick stated that it was possible that the defendant's medications, atorvastatin and Detrol, which can cause cognitive problems, are contributing to her cognitive difficulties.  Mechanick Report at p. 11.

20.  Dr. Mechanick found the defendant possessed a basic understanding of the roles of a judge, jury, defense attorney, and the prosecution.  Mechanick Report at p. 11.

21.  Dr. Mechanick also found that the defendant does not want to deal with her criminal charges, and at times may willfully avoid doing so.  For example, when asked about forfeiture, she replied, "I don't understand it because I don't believe it."  Mechanick Report at p. 9.

22. The defendant told Dr. Mechanick that she was not interested in a plea bargain, because she had not done anything wrong. She said that everyone who testified had lied. Mechanick Report at p. 8,10.

23. Dr. Mechanick concluded that the defendant's cognitive problems substantially impaired her ability to assist her attorneys in the preparation and conduct of her defense, and that she lacked a detailed understanding of the charges she faced, and the penalties she faced if convicted. Mechanick Report at p. 11; Tr. 1/28/2015 at p. 7.

24. Dr. Mechanick concluded that the defendant's difficulty in her ability to provide detailed information about herself and to recall specific dates and details of events related to her case impaired her ability to provide accurate information to her attorneys, to testify accurately and relevantly, and to assist her attorneys in challenging defense witnesses. Mechanick Report at p. 11.

25. Mechanick concluded that the defendant had a rational understanding of the nature and object of the proceedings against her, but lacked the ability to consult with her attorneys with a reasonable degree of rational understanding and to assist properly in her defense. Mechanick Report at p. 12.

**2. Court Appointed Expert Pogos H. Voskanian, M.D., Found Defendant Brown Competent To Stand Trial**

26. Prior to issuing his report, Dr. Voskanian reviewed the reports of the examinations of Drs. Mechanick, Malamut, and Summerton. Voskanian Report at p. 1-2.

27. Before she was asked questions about her family background, the defendant gave Dr. Voskanian what she identified as a "cheat sheet." During the interview, however, she did not have access to her cheat sheet, and gave a very detailed and long description of her personal and

family history. She also revealed a traumatic incident that she had not mentioned to any of the other doctors. Voskanian Report at p. 4-8.

28. According to Dr. Voskanian, the defendant was focused, logical and coherent during the entire interview, but had difficulty remembering names and dates. Voskanian Report at p. 11, 20; Tr. 1/28/15 at p. 62.

29. Dr. Voskanian found that Brown had some degree of forgetfulness that was probably age-related. Voskanian Report at p. 3.

30. The defendant told Dr. Voskanian that she has memory problems when she thinks about the trial of this case, and prefers not to deal with it. Voskanian Report at p. 8-9; Tr. 1/28/15 at p. 117-18.

31. The defendant told Dr. Voskanian that the problem with her case was that people were lying about her. Voskanian Report at p. 12-14.

32. Brown said that she would not plead guilty because she had not done anything wrong. Voskanian Report at p. 15.

33. The defendant scored 28 out of 30 points on the Standardized Mini-Mental State Status Examination (MMSE) administered to her by Dr. Voskanian, which, according to him, suggests that she does not suffer from any neurocognitive decline. Dr. Voskanian opined that, at worst, the defendant may have age-related memory difficulties which do not substantially affect her competency to stand trial. Voskanian Report at p. 19; Tr. 1/28/15 at p. 69-70, 74-75, 104.

34. Dr. Voskanian did not find any clear documentation of amnesia in the defendant's medical history and determined that she did not have a neurocognitive disorder. Voskanian Report at p. 19, 21; Tr. 1/28/15 at p. 69-70, 74-75, 104.

35.   Dr. Voskanian determined that the defendant was able to initiate and maintain a cooperative relationship with her lawyer, that she relies on her attorney for assistance, and was pleased with her attorney's performance during the first trial. Voskanian Report at p. 15, 19; Tr. 1/28/15 at p. 101.

36.   Dr. Voskanian concluded that the defendant had a good recollection of what took place during her first trial and a good understanding of the issues involved in the case.  She told Dr. Voskanian that she relied on her attorney to assist her with refreshing her recollection about details during the trial.  Voskanian Report at p. 15-16; Tr. 1/28/15 at p. 94-100.

37.   Although Dr. Voskanian remarked that the defendant's ability to testify could be "somewhat limited" because of her memory issues, he noted that she realized that she does not have to testify, and would be challenged on cross-examination if she did.   He concluded that the defendant was able to testify "relevantly" and be cross-examined.  Voskanian Report at p. 15-16, 20.

38.   Dr. Voskanian stated that the defendant's memory issues can be explained by her tendency to "block out" what she does not want to hear or to face.  He also opined that her memory problems, at worst, can be explained by an appropriate age-related decline in cognitive functioning and do not compromise her competency to stand trial.  Voskanian Report at p. 21; Tr. 1/28/15 at p 117-18.

39.   He also stated that the possibly that the defendant was malingering could not be ruled out.  Voskanian Report at p. 19, 21.

40.   Dr. Voskanian found that the defendant was very familiar with her case, and that her limitations were related to her claims of inability to recall specific names and dates. Voskanian Report at p. 19.

41. Dr. Voskanian concluded that, with a reasonable degree of medical certainty, at the time of the examination, the defendant was able to understand the proceedings against her and was able assist her attorney in her defense with a reasonable degree of rational understanding and therefore was competent to stand trial. Voskanian Report at p. 3, 21.

### 3. Court Appointed Expert Jeffrey Summerton, Ph.D. Found Defendant Brown Competent To Stand Trial

42. Jeffery Summerton, Ph.D., a psychologist, examined Brown, and prepared a report at the Court's request. *See* Court Exhibit 2 (September 13, 2014 Report of Dr. Summerton); Tr. 1/28/15 at p. 135.

43. Dr. Summerton specializes in forensic psychology, and is often appointed by courts to render opinions on the issue of competence. Tr. 1/28/15 at p. 136-37.

44. Dr. Summerton's evaluation included a three and a half hour clinical evaluation of defendant Brown. Summerton Report at p. 1. Dr. Summerton performed the following mental status examinations: Mini-Mental State Examination (MMSE); the Beck Depression Inventory - IT, the Beck Anxiety Inventory, the Personality Assessment Screener, and the Paulhus Deception Scales.

45. On the MMSE, Dr. Summerton did not find Brown "severely" impaired or "moderately" impaired. Brown scored a 23, which is only "mildly" impaired. Tr. 1/28/15 at p. 179.

46. Dr. Summerton interviewed and evaluated Brown psychometrically via the MacArthur Competence Assessment Tool-Criminal Adjudication ("MacArthur"). Brown scored in the "mild" impairment range, rather than a clinically significant or severe impairment. Tr. 1/28/15 at p. 142, 180.

47.  The general principles for competency set forth in *Dusky v. United States,* 362 U.S. 402 (1960) served as a guide for Dr. Summerton's report.  Summerton Report at p. 1; *See also* Tr. 1/28/15 at p. 140-41.

48.  Dr. Summerton found Brown was responsive and cooperative.  Summerton Report at p. 1.  Brown self-reported that her memory is "not the same" as it had been.  *Id.* at 2.  Brown's answers at times were "vague."  *Id.*  Summerton attributed this to the self-reported memory impairment, but noted that "deliberate withholding" cannot be ruled out.  *Id.* at 3.

49.  Dr. Summerton found that Brown was alert and generally responsive to questions.  *Id.* at 3.  Brown recognized her memory failures, *Id.*, appeared to be of average intelligence, and appeared to be adequately meeting demands of everyday life.  *Id.* at 4.

50.  Dr. Summerton found that Brown had a basic understanding of the operation of the court in terms of the prosecution, defense, judge and jury.  *Id.* at 7.  Brown recognized that she faced substantial penalties if convicted. *Id.*

51.  In conducting his competency examinations, Dr. Summerton does not ask defendants specifically about the facts of their cases.  Tr. 1/28/15 at p. 144; 185.  Dr. Summerton's competency determination does not hinge on whether or not a defendant can recall a specific fact.  *Id.* at 185.

52.  Dr. Summerton concluded that Brown understood her charges, without using the formal terms wire fraud, witness tampering, or obstruction of justice.  *Id.* at 144.  For example, Dr. Summerton recalled that Brown stated that "they accused her of talking to people to try to get them to change things."  *Id.* at 146.  Dr. Summerton found that Brown "bitterly" complained about how she had come to be in the legal system.  Summerton Report at 7; S*ee also* Tr. 1/28/15 at p. 144.  Brown contended that co-defendants and other witnesses "lied on her."  Summerton

Report at p. 7.  Brown provided Dr. Summerton with "specific information that led [Summerton] to believe that she [Brown] understood the actual charges that she was facing."  Tr. 1/28/15 at p. 144.

53.  Summerton found that Brown understood her right to testify.  Tr. 1/28/15 at p. 185.  Dr. Summerton did not know if counsel and client would chose to have Brown testify.  Tr. 1/28/15 at p. 168; 186.

54.  Dr. Summerton found that Brown's memory was impaired at times.  Tr. 1/28/15 at p. 152; Summerton Report at 3.  In his report, Dr. Summerton opined that emotional factors are likely a source of Brown's reported memory problems.  Summerton Report at 9.  Dr. Summerton acknowledged that Brown does not want to deal with this case. Tr. 1/28/15 at p. 184.

55.  During the evaluation, defendant Brown told Dr. Summerton that memory problems would affect her ability to assist counsel.  Tr. 1/28/15 at p. 154.  Therefore, when Dr. Summerton evaluated Brown, "the thing that had me most concerned was her ability to communicate with counsel."  Tr. 1/28/15 at p. 155, 156, 188-189.

56.  In his report of September 13, 2014, Dr. Summerton opined that Brown "may" suffer from Dissociative Amnesia.  Summerton Report at p. 10.  Dr. Summerton did not diagnose Brown with Dissociative Amnesia, but believed it was a possibility.  Tr. 1/28/15 at p. 182.  Dr. Summerton's report also stated that memory is one of the easiest mental problems to fake and therefore malingering was a possibility.  *Id.*  Dr. Summerton's report concluded that mental health treatment may assist in treating the dissociative disorder.  *Id.*

57.  Dr. Summerton testified that "I don't think that the dissociative amnesia makes her not competent.  My question on the competence of this was whether or not she could cooperate with [counsel.] Tr. 1/28/15 at p. 160; *see also* p. 182.

58.   Based on additional information he received after he had completed his report, Dr. Summerton changed his opinion.  Tr. 1/28/15 at p. 182.  Dr. Summerton testified that when he evaluates a criminal defendant, he sees "a slice of their behavior."  Tr. 1/28/15 at p. 154.  After completing his report, and prior to his testimony, Dr. Summerton reviewed the report of Dr. Anthony, which was prepared at FMC Carswell.  *See e.g.* Tr. 1/28/15 p. 156.  Based upon the findings of Dr. Anthony and the FMC Carswell staff, which were based on observations made over an extended period of time at FMC Carswell, Dr. Summerton concluded that the dissociated amnesia had remitted sufficiently that Brown had the ability to consult and assist her lawyer.  Tr. 1/28/15 at p. 161, 182.

59.   Dr. Summerton testified that Dr. Anthony at FMC Carswell had more time to interview Brown over a longer period of time than he did.  *Id.* at 155.  Summerton found it significant that Brown's attorney had represented Brown in this case for years.  *Id.* at 186. Dr. Summerton stated that Brown could review documents with her attorneys to refresh her recollection.  *Id.* at 156-157.  Brown and her attorneys could review transcripts of her first trial to refresh her recollection. *Id.* at 156-57, 186.

60.   Dr. Summerton identified several of FMC Carswell's findings on which he relied: Brown was able to name her attorneys, including the main defense attorneys; Brown was comfortable with her attorneys; Brown trusts her attorneys; Brown stated the attorneys probably have all the information required to try the case; Brown expects her attorney to do his best not to lose the case; Brown could call the young attorneys at the firm "any time" and get an answer; and while Brown had difficulty recalling the content of meetings, she had a binder to record thoughts and interactions, and as a result, was able to recall more. *Id.* at 156-57.

61.   Dr. Summerton testified that because defense counsel is aware of Brown's memory problems, counsel can adjust their approach to their client.  Specially, counsel can structure meetings and enlist memory aids (such as documents and notebooks) and communicate with the help of Brown's husband.  *Id.* at 157-58.

62.   Dr. Summerton's opinion at the time of his testimony was that Brown is competent to stand trial and assist counsel in her defense.  Tr. 1/28/15 at p. 158, 160-61, 182.

### 4.   Defense Expert Barbara Malamut, Ph.D. Can Not and Did Not Opine on Defendant Brown's Competency to Stand Trial

63.   Barbara Malamut, Ph.D., a clinical neuropsychologist, examined Brown for the purpose of providing a diagnosis and prepared a report at the defendant's request.  *See* Defense Exhibit 2A (August 2014 Report of Dr. Malamut); Tr. 1/30/15 at p. 8.

64.   Dr. Malamut evaluates brain functioning by looking at a person's cognitive abilities or mental skills.  Tr. 1/30/15 at p. 6.  Dr. Malamut has never testified or been qualified as an expert in a criminal case.  *Id.* at p. 53.

65.   Dr. Malamut met with defendant Brown on three dates:  August 6th, 11th, and 13th, 2014.  Malamut Report at p. 1, 3.  Brown arranged for her appointment and drove herself to the office all three days.  *Id*. at 3.  The first meeting lasted 75 minutes.  *Id.*

66.   Dr. Malamut performed approximately 3 dozen tests on Brown.  Malamut Report at p. 3, 9-10.

67.   On the Mini-Mental State Examination – II (MMSE - II), Brown had a raw score of 20, which is impaired.  *Id.* at 4.  Brown's overall performance on tests of intelligence using the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) reflected that she was functioning in the low average range overall. *Id.*  In general, Brown's verbal and nonverbal abstract reasoning were average. *Id.*

68.  Brown's repetition of single sentences of increasing length and complexity was superior (Sentence Repetition).  *Id.* at 5.   Brown's simple auditory attention was average when recalling a string of numbers in the order of presentation (Digit Span Forward) and below average when recalling in any order a list of words read to her (CVLT-SF Trial 1). *Id.*  Brown's performance was average when she was required to mentally reverse a string of numbers and when mentally reorganizing numbers in sequential order (Digit Span Reversed, Digit Sequencing).  *Id.*

69.  Dr. Malamut concluded that Brown's performance on the mental status screen fell within the impaired range.  *Id.* at 7.

70.  Dr. Malamut concluded Brown suffered from a Mild Neurocognitive Disorder, Unspecified Etiology.  *Id.* at 8.   One part of this diagnosis is a cognitive decline from a previously higher level of performance in more than one cognitive domain. *Id.* at 8.  Dr. Malamut also recognized that Brown is under a great deal of stress, which could be the cause of some of her perceived deficits.  Malamut Report at p. 8.

71.  Dr. Malamut also concluded that Brown does not have a Major Neurocognitive Disorder or dementia.  Malamut Report at p. 8. Tr. 1/30/15 at p. 67. She also determined that Brown was able to carry out Instrumental Activities of Daily Living, such as driving, managing her medications, and shopping.  *Id.*

72.  Dr. Malamut's report contains no opinion on the defendant's competency to stand trial.  Malamut Report; Tr. 1/30/15 at p. 53.

73.  Dr. Malamut's report contains no opinion about the defendant's ability to understand the nature and extent of the criminal charges pending against her, her understanding the role of her defense attorneys, her understanding of her role as the accused in a criminal case,

her understanding of the roles of the judge, the prosecutors, the jury and the witnesses, her understanding of pleas of guilty and not guilty, and her understanding of the nature of punishment if she is found guilty of the crimes charged. *See* Malamut Report.

74. Dr. Malamut does not have any training or experience in formulating opinions about defendant's competency to stand trial. Tr. 1/30/15 at p. 54.

## 5. Christine Anthony, Ph.D. and the Staff at FMC Carswell Found Defendant Brown Competent to Stand Trial

75. By order dated September 24, 2014, defendant Brown was committed to the custody of the Attorney General for a competency examination. By letter dated November 28, 2014, Warden Jody Upton certified that in the opinion of the clinical staff of Federal Medical Center in Carswell, Texas ("FMC Carswell"), defendant Brown does not currently display symptoms of mental illness which render her unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense. *See* Government's Exhibit 1. The warden enclosed a November 20, 2014 psychological report prepared by Christine Anthony, Ph.D., a forensic psychologist, and the staff FMC Carswell. *See* Government Exhibit 1 (November 20, 2014 Report, "Carswell Report"); Tr. 1/29/15 at p.6.

76. Dr. Anthony specializes in forensic psychology. She has been employed at FMC Carswell for four and a half years. Tr. 1/29/15 at p. 5. She has performed hundreds of competency examinations pursuant to court orders under § 4241(b). Tr. 1/29/15 at p. 5.

77. Defendant Brown arrived at FMC Carswell on October 15, 2014 and was released on November 13, 2014. Carswell Report at p. 5, 7.

78. In addition to the time spent administering a Personality Assessment Inventory, defendant Brown was clinically interviewed by Dr. Anthony on four different dates (10/15, 10/17, 10/29 and 11/6) and by Dr. Kim, Chief Psychologist, on another date (11/10) during the

course of the 29-day evaluation. *See* Defense Exhibit 18; Tr. 1/29/15 p. 22-25. In addition, Dr. Anthony monitored a sample of Brown's phone calls. Carswell Report at p. 1, 6.

79. Additional members of the FMC Carswell forensic team, as well as correctional and medical staff, had the opportunity to observe Brown's behavior during the course of the evaluation. Carswell Report at p. 1. This included mental health nurses who have extensive experience working with the mentally ill and on Alzheimer's units. Tr. 1/29/15 at p. 21-22. The nurses were on specific alert for any sort of confusion or need for redirection by Brown. *Id.*

80. Defendant Brown independently sought out Dr. Anthony on November 12, 2014, toward the conclusion of Brown's evaluation period. Defense Exhibit 18, tab 6, Carswell Report at p. 7.

81. The Carswell evaluation occurred after the Malamut, Mechanick, Voskanian and Summerton evaluations were completed. Dr. Anthony had the benefit of information from those reports. Carswell Report at p. 4-5 (summarizing the four prior evaluations). Dr. Anthony reviewed each of those reports, together with the medical records discussed in those reports. Carswell Report at p. 1-2. Dr. Anthony knew that prior evaluations focused on Brown's memory. T. 1/29/15 at p. 38. In other§ 4241(b) assessments, Dr. Anthony has spoken to counsel when she was missing information or did not know why a person was sent for a competency exam. Tr. 1/29/15 p 37-38. Here, because she had received prior evaluations and other information from the prosecuting and defense attorneys, Dr. Anthony did not need to contact counsel during the 29-day evaluation period. *Id.*

82. Upon Brown's arrival at FMC Carswell on October 15, 2014, Brown was interviewed in the Receiving and Discharge department. At that time, Brown reported she did not know the date, including the current year, and also stated she believed he was in Washington

rather than Texas. The Carswell admitting nurse reported that defendant Brown was able to accurately recall the date and her location during that interview shortly after her first contact with Dr. Anthony. Dr. Anthony also noted that, at the end of her evaluation period, defendant Brown was able to name the facility, city, state, and year when asked. Carswell Report at p. 5.

83. As part of the Carswell evaluation, Brown was routinely observed and monitored by medical, psychiatric, and psychological staff. The nursing staff noted Brown did not appear confused or disorganized while on the Ml unit and she did not require any redirection. Carswell Report at p. 5. Brown was observed interacting appropriately with others and sought nursing staff as needed. Carswell Report at p. 6.

84. Recreation staff reported Brown was able to navigate her way successfully to the recreation department. Brown was observed participating in games and "had no problems with the most difficult ones". Carswell Report at p. 6. Brown was observed giving instructions to other inmates, such as informing them that they needed to sign in and wait in the psychology department. *Id.*

85. Brown was able to find her way to the psychology department and to Dr. Anthony's office. Brown was pleasant and cooperative, and she was able to recall topics which were previously discussed. Carswell Report at p. 6.

86. Brown recalled her interactions with inmates and staff on the M1 unit; however, Brown noted that she was unable to recall names. After Brown was given notebooks to assist with her reported memory difficulties, Brown took notes and referred to her notebook appropriately. Carswell Report at p. 6.

87. Brown was unable to accurately recall her age, and she referred to one of her notebooks to get the answer. Dr. Anthony found that Brown is able to more effectively recall

more and specific information when she is given open ended questions or is permitted to speak at length, compared to when she is asked direct questions which anticipate short answers.  Carswell Report at p. 6.

88.   Telephone conversations demonstrated Brown's ability to recall information. Carswell Report at p. 6.  Brown reminded her husband that the phone calls were monitored, and expressed reluctance to contact her attorney on the phone while she was housed at Carswell. Brown described her meetings with the psychologist and recalled the doctor's name.  Brown informed her husband that her presiding judge called Dr. Anthony regarding the status of her case and anticipated departure from this facility; Brown speculated appropriately about the reason for this call.  At the end of her evaluation period, Brown instructed her husband not to place any additional money in her commissary account. She also noted she had reduced her commissary purchases in anticipation of her release, suggesting an appreciation and an ability to budget appropriately.  *Id.*

89.   Toward the end of her evaluation process, defendant Brown sought out Dr. Anthony with regard to her release. She expressed understanding of the process, noting that other institutional staff had to complete the necessary paperwork for her departure.  Brown was able to relay this information to her husband as well.  Brown asked about receiving a specific date so she and her husband could begin to make reservations.  Carswell Report at p. 7.

90.   Dr. Anthony found that Brown's thought process appeared organized and Brown's responses were relevant and appropriate.  Dr. Anthony concluded Brown appeared to have unimpaired insight and judgment.  Brown did not display any significant memory impairments which affected her daily functioning.  Brown was able to recall previous discussions with Dr. Anthony, navigate her way to different areas in the institution, and actively engaged in

efforts to be released.  Carswell Report at p. 7.  Brown continued to report having memory-related difficulties and referred to her notebooks to accurately provide information regarding dates and numbers or specific places.  Carswell Report at p. 8.

91.   During the 29-day evaluation period, Brown was administered the Personality Assessment Inventory.  Carswell Report at p. 8.  Dr. Anthony found that Brown's results showed that Brown does not have clinically significant levels of depression, anxiety, or mental illness.  Dr. Anthony did find, however, that Brown's profile suggests she may be experiencing some subclinical feelings of persecution and paranoia related to her legal situation.  Her results also reflect she may be experiencing some stress or anxiety, but is able to cope with this stress because she has social support.  *Id.*

92.   Brown displayed a good factual knowledge of courtroom procedures and clearly understood the roles of judges, prosecutors, and defense attorneys.  Carswell Report at p. 8.

93.   Brown understood that the judge is in charge of the courtroom and can determine the defendant's sentence.  Brown identified the defense attorney as the person who speaks for the defendant in the courtroom.  Brown reported the prosecutor is against the defendant and would want the defendant to be found guilty at trial.  Brown knew that 12 people are on a jury and recalled seeing extra jurors, or alternates, during her trial, and that the jury specifically decides whether you are guilty or not guilty.  Carswell Report at p. 8.

94.   Brown displayed an understanding of available pleas and the consequences of such pleas.  For instance, Brown reported if a defendant pleads not guilty, the defendant is stating "you didn't do it."  Consequently, "they place it before the jury" and "it would go to trial."  Carswell Report at p. 8.  Brown applied these concepts to her own case.  Carswell Report at p. 10.

95.     Brown accurately described the trial process, including that the prosecution and defense can call and question witnesses.  Carswell Report at p. 8.  Brown understood that if a defendant takes the stand to testify, the prosecutor gets to question the defendant, and the defendant "may give out information that is harmful to them."  Carswell Report at p. 9.

96.     Brown was able to apply legal concepts to her own legal situation.  Brown reported that her case had gone to trial, that there was a hung jury, and "I knew we were going back to court." Carswell Report at p. 9.

97.     Brown reported that "I can focus before the trial starts, but then something blanks me out."  Brown also discussed the witnesses at her trial, and stated that they "lied." Carswell Report at p. 9.  Brown identified, by name, a member of the press whom she observed in the courtroom during trial.  Carswell Report p. at 9; *See also* Defense Exhibit 18 tab 3 (notes). Likewise, Brown reported that when trial resulted in a hung jury, the woman AUSA said they would try this case again.  Defense Exhibit 18 tab 5 (notes).  Brown anticipated additional witnesses would be called by the defense at the retrial.  Carswell Report at p. 10.

98.     Dr. Anthony was satisfied that Brown "knew she was being charged with orchestrating the production of false documents and leading the creation of false meeting minutes, and of these contracts being missing, and…witness tampering."  Dr. Anthony noted the indictment is "complex and lengthy" and Brown's report of the charges was "consistent with the indictment...[Brown] mentioned particular schools. She mentioned K12."  Tr. 1/29/15 at p. 28.

99.     Dr. Anthony noted that Brown had difficulties with dates and numbers. Tr. 1/29/15 at p. 41.  However, Dr. Anthony observed that Brown was able to learn and recall different things even after Dr. Anthony said them just once.  *Id.*

100. With respect to Brown's ability to assist counsel, Brown was able to name her attorneys, including the lead attorney. Brown described feeling comfortable with her attorneys, and she reported the firm with which she is working has "young attorneys" whom she "can call anytime and they will give you an answer." Carswell Report at p. 10. Brown reported she has had difficulty recalling the content of their meetings, so she now has a binder to record her thoughts and interactions and she is able to recall more. *Id.* Brown trusts her attorneys and says they can refresh her recollections by having her review documents. *Id.*

101. Brown reported that she trusts her attorneys and expects her attorneys to do the best they can and not lose the case. Carswell Report at p. 10. Brown stated that the attorneys "probably have all the information" required to try the case. In addition, Brown noted her husband accompanies her to meetings with the attorneys. Carswell Report at p. 10.

102. Dr. Anthony determined that Brown is able to describe her case and communicate appropriately about her intentions regarding her case. It is likely Brown will continue to feel betrayed and upset when her former coworkers and friends testify against her, as well as be concerned about the media's portrayal of her. Brown may be able to help her attorneys by reviewing transcripts of the first trial and providing input. In addition, Brown stated that notebooks have been helpful in helping her recall dates and other specific information, so she should be encouraged to take notes during meetings. Carswell Report at p. 11.

103. Dr. Anthony stated that in assessing competency, she does not need to take a defendant through every page of a 76-page indictment to see if the defendant has an understanding. Tr. 1/29/15 at p. 52. Dr. Anthony was focused on Brown's ability to communicate with her attorneys, have a factual understanding of the legal process, and have a factual understanding of her case. *Id.* at 52-53.

104.	Dr. Anthony testified that this "is a complex case." Tr. 1/29/15 at p. 50. Dr. Anthony testified that an "attorney should have a good understanding of the case, be able to explain it in very simple terms, make sure the person has a good understanding of that…and I believe that Ms. Brown is able, if you give her simple explanations, to understand materials." Tr. 1/29/15 at p. 49. Dr. Anthony opined that if legal matters "were explained simply, [Brown] would definitely understand." *Id.* at 50.

105.	Dr. Anthony did not diagnose Brown with a mental disorder, primarily because Brown does not have any impairment in daily functioning. Carswell Report at p. 10-11.

106.	Dr. Anthony and the staff at Carswell concluded it was "our professional opinion that Brown is competent to proceed."

107.	Dr. Anthony and the staff at Carswell concluded Brown does not meet the criteria for a mental disease or defect which would impair her factual and rational understand of the legal proceeding before her or impair her ability to communication with her attorney with a reasonable degree of rational understanding. Carswell Report at p. 11.

108.	Dr. Anthony testified that even if the Court accepted Dr. Malamut's diagnosis of Mild Neurocognitive disorder, it would not change Dr. Anthony's opinion about Brown's competence. Tr. 1/29/15 at p. 48; 51-52. Dr. Anthony testified that "just because you are diagnosed with a mental disorder does not automatically mean that you are not competent to stand trial. There has to be a direct link between the two." *Id.* Because of the competency-related abilities that Brown displayed to Dr. Anthony at FMC Carswell, Dr. Malamut's diagnosis did not change Dr. Anthony's professional opinion that the defendant Brown is competent to stand trial. *Id.* at p. 48.

## II.    CONCLUSIONS OF LAW

1.    The Court must determine "by a preponderance of the evidence [whether] the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense".  18 U.S.C. § 4241(d).

2.    If the Court finds that the defendant is not competent to stand trial, the Court "shall commit the defendant to the custody of the Attorney General".  *Id.*   The Attorney General then must hospitalize the defendant for treatment and evaluation in a suitable facility.  *Id.*[1]

3.    The government has the burden of proving the defendant's competency by a preponderance of the evidence.  *United States v. Velasquez*, 885 F. 2d 1076, 1089 (3d Cir. 1989).

4.    To be deemed competent to stand trial, a defendant must: "(1) have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) possess 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Renfroe*, 825 F.2d 763, 767 (3d Cir. 1987) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  Requiring a criminal defendant to "be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran,* 509 U.S. 389, 402 (1993).

5.    The Court "must examine the unique circumstances of the case and decide whether the defendant '(1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial.' " *United States v. Jones*, 336 F.3d 245, 256 (3d Cir. 2003) (citations omitted).

---

[1]  Once the district court makes a finding that the defendant is not competent to stand trial, the district court has no discretion whether or not to commit her to the custody of the Attorney General for hospitalization.  *See United States v. Millard-Grasshorn*, 603 F.3d 492, 494 (8th Cir. 2010) (holding that hospitalization is mandatory); *United States v. Ferro*, 321 F.3d 756, 761 (8th Cir. 2003) (same).

6.      When evaluating a defendant's competency, the Court "must consider a number of factors, including 'evidence of a defendant's irrational behavior, his demeanor at trial, [and] any prior medical opinion on competence to stand trial.' " *Id.* (*quoting United States v. Leggett*, 162 F.3d 237, 242 (3d Cir. 1998)).

7.      Brown was evaluated by four doctors trained and qualified to render an expert opinion on her competency to stand trial. *See* Mechanick Report, Summerton Report, Voskanian Report, and Carswell Report.  Three of those four doctors found Brown competent to stand trial. *See* Carswell Report, Voskanian Report, and Summerton testimony.[2]

8.      It is within the district court's discretion to choose one expert's opinion over a competing qualified expert's opinion. *United States v. DeCoteau*, 630 F.3d 1091, 1096 (8th Cir. 2011).

9.      When considering conflicting expert medical testimony regarding mental competency, the Court may take into consideration the length of time each expert has spent with the defendant. *See United States v. Jackson*, 2005 WL 2495847 (E.D.Pa Oct. 7, 2005) (Surrick, J.) (court considered cumulative time spent by each doctor with defendant); *United States v. Hoyt*, 200 F.Supp.2d 790, 794 (N.D.Ohio 2002) (two equally qualified court-appointed experts reached opposite conclusions regarding a defendant's competence to stand trial; court appropriately relied on the expert who had spent more time evaluating the defendant).

10.    Here, the Carswell evaluation period (29 days) was longer than the combined evaluation period of the other four reports prepared in this case:  Dr. Mechanick (4 hours, 15 minutes), Dr. Voskanian (5 hours, 45 minutes) and Dr. Summerton (3 hours, 30 minutes) each spent less than one day with Brown; Dr. Malamut's evaluation covered portions of three days.

---

[2]  Arguably, it is four out of five doctors qualified to render an expert opinion that evaluated Brown and found her competent:  the Carswell report finding Brown competent was authored by two psychologists,  Dr. Anthony and Dr. Kim.

11.   During the course of the 29-day evaluation, defendant Brown was clinically interviewed by Dr. Anthony on four different dates and by Dr. Kim, Chief Psychologist, on yet another date.  *See* Defense Exhibit 18; Tr. 1/29/15 at p. 22-25.  In addition, Dr. Anthony monitored a sample of Brown's phone calls.  Additional members of the FMC Carswell forensic team, as well as correctional and medical staff, had the opportunity to observe Brown's behavior during the course of the evaluation.  Carswell Report at p. 1.  This included mental health nurses who have extensive experience working with the mentally ill and on Alzheimer's units.  Tr. 1/29/15 at p. 21-22.  It is clear that the FMC Carswell staff had more opportunity to observe and evaluate Brown than any other evaluating doctor.

12. Four doctors administered a Mini-Mental State Status Examination (MMSE) to Brown. The test results were variable among the examiners, ranging from no impairment to mild impairment, with one examiner finding moderate impairment.  No examiner found the defendant severely impaired.  The defendant scored 28 out of 30 points on the MMSE administered to her by Dr. Voskanian, which, according to him, suggests that she does not suffer from any neurocognitive decline. On the MMSE administered by Dr. Summerton, Brown scored a 23 which is mildly impaired.  On the MMSE – II administered by Malamut, Brown had a raw score of 20, which is impaired.  Malamut report at 4.  On the MMSE administered by Mechanick, Brown's score was 17, which is in the upper end of the range of moderate cognitive impairment.

13.   That the defendant has problems recalling some of the details about her past and about her case does not render her incompetent.  Courts have routinely held that amnesia which affects a defendant's recall concerning the charged offense does not automatically make the defendant incompetent to stand trial.  *United States v. Andrews*, 469 F.3d 1113, 1118-19 (7th Cir. 2006) ("amnesia alone does not render a defendant incompetent to stand trial"); *United States v.*

*Villegas*, 899 F.2d 1324, 1341 (2d Cir. 1990); *United States v. Mota*, 598 F.2d 995, 998 (5th Cir. 1979) ("amnesia does not constitute incompetency per se to stand trial"). The propriety of trying a defendant suffering from some type of amnesia, like any other defendant, must be determined in light of all of circumstances of the case. *See United States v. Rinchack*, 820 F.2d 1557, 1569 (11th Cir. 1987).

14. In *United States v. Villegas*, 899 F.2d 1324 (2d Cir. 1990), the defendant argued on appeal that the district court erroneously found him competent to stand trial. While awaiting trial, the defendant contracted meningitis of the lining of his brain, which can damage neurological functions. 899 F.2d at 1341. He unsuccessfully argued that after he recovered, he suffered from amnesia and was unable to recall current information and the events surrounding his arrest, and was not competent to stand trial as a result. *Id.* The defendant was convicted of conspiracy to manufacture and distribute cocaine arising from his role in the processing of cocaine. 899 F.2d at 1329.

15. At the *Villegas* competency hearing, the defense expert testified that the defendant was suffering from a dementia caused by the brain infection. *Id.* at 1342. One of the government's experts testified that the defendant had some amnesia relating to the events surrounding his arrest, but was able to recall events prior to that date. The witness further testified that this limited amnesia was not related to the infection and that the defendant was able to consult with his lawyer with a reasonable degree of rational understanding and possessed a rational understanding of the proceedings against him. The other government expert, the chief physician at the federal prison where the defendant was detained, testified that based on his daily observations the defendant, his amnesia was feigned. *Id.*

16. Even though it found the defendant competent, the *Villegas* court did not rule out the possibility that the defendant was actually unable to recall all of the events surrounding the crime based on the testimony of two of the three experts. It noted, however, that the infection occurred months after the arrest and that the defendant had clearly been able to provide information to his attorneys and assist in the preparation of his defense. *Id.* During that period, the defense had, among other things, moved to suppress evidence and requested a severance on the ground that his defense was inconsistent with those of other defendants. *Id.* at 1342-43. The court of appeals found that the district court's finding that the defendant was competent to stand trial was not clearly erroneous. 899 F.2d at 1343.

17. The facts of this case which support a finding that the defendant is competent to stand trial are more compelling than those of *Villegas*. Defendant Brown has been represented by her defense attorney since 2008. This included the inception of the criminal investigation, responding to subpoenas, and representation during a search warrant executed at Brown's schools' offices. Prior to the first trial, defense counsel received discovery from the government, filed motions to dismiss and motions to suppress on behalf of Brown. Defendant Brown and her current defense team participated in the first trial of this case, where fifty-nine witnesses testified, and hundreds of exhibits were introduced into evidence. As Brown reported to the FMC Carswell staff, her attorneys "probably have all the information" required to try the case. Carswell Report at p. 10. Dr. Voskanian testified that a defendant does not have to possess all of the information her attorneys have to be found competent. Tr. 1/28/2015 at p. 100. Moreover, Brown stated that her counsel "could refresh [her] memory first" when they speak or have her review documents. *Id.;* Voskanian Report at p. 15-16; Tr. 1/28/15 at p. 94-100 (Brown relies on her attorney to refresh her recollection); s*ee also United States v. Rinchack, 8*20 F.2d 1557, 1570

(11th Cir. 1987) (one factor considered by court in finding the defendant competent to stand trial was access to transcripts of judicial proceedings to reconstruct the crime).

18.   The defendant told all the competency-examining doctors that she has memory problems when she thinks about the trial of this case, and prefers not to deal with it. Mechanick Report at p. 12; Tr. 1/28/15 at p. 20; Summerton Report at p. 9; Tr. 1/28/15 at p. 182; Voskanian Report at p. 8-9; Carswell Report at p. 7, 9.

19.   The defendant told all the competency-examining doctors that the problem with her case was that people were lying about her.  Mechanick Report at p. 8; Summerton Report at p. 7; Voskanian Report at p. 12-14; Carswell Report at p. 9.

20.   Brown told all the competency-examining doctors that she would not plead guilty because she believed she had not done anything wrong.  Mechanick Report at p. 10; Summerton at p. 7; Voskanian Report at p. 15; Carswell Report at p.10.  *See Also United States v. Rinchack*, 820 F.2d 1557, 1570 (11th Cir. 1987) (one factor considered by court in finding the defendant competent to stand trial was the lack of evidence that the defendant's condition caused a failure to identify exculpatory information).

21.   During the competency hearing, defense counsel questioned the experts about the transcript of testimony given by June Brown on April 25, 2014.  Defense Exhibit 7.  The purpose of that hearing was to resolve due process claims of discrimination and retaliation brought by the parent of a Philadelphia School District and Main Line Academy student.  The subject of the hearing involved incidents that occurred in October and November of 2013.

22.   During Brown's April 2014 testimony, the defendant was able to recall the relevant facts and school district policies regarding these incidents.  For example, Brown recalled the date and circumstances surrounding the incident, and where she was that day.  Defense

Exhibit 7, Tr. 4/25/14 at p. 143, 169-170, 188. Brown specifically recalled the difficulty getting in touch with the mother of the student, and that the student left the school after the incident with the art teacher. *Id.* at p. 182, 191. Brown also recalled details of a second incident when the student left the school and the police were called. *Id.* at p. 222, 227. Finally, Brown was very clear about her understanding and recollection of the school district policies and procedures that apply when a student leaves the school property. *Id.* at p. 194-95.

23. The facts that Brown was unable to recall were details that were not central to the purpose of the hearing. Brown was unable to recall where she obtained her doctorate. *Id.* at 135, 150, 176. She was also unable to recall who typed everything in the school, the exact hours she was at Main Line Academy on a given day, a few conversations, and the exact words she used when talking with someone about the incident. *Id.* at p. 122, 131, 158, 175, 205.

24. The transcript reflects that in April 2014, Brown was able to provide relevant testimony in an adversarial setting. Her failure to recall details, most of which were not central to the matter before the hearing officer, did not detract from her testimony. This testimony supports the conclusion of Dr. Voskanian, that Brown is able to testify "relevantly" and be cross-examined. Voskanian Report at p. 15-16, 20. This testimony likewise supports the conclusion of Drs. Anthony and Summerton, who reported that despite Brown's inability to recall certain details, the defendant understood the risks and benefits of testifying on her own behalf. Carswell Report at p. 9; Summerton Tr. 1/29/15 at p. 168, 185, 186; *see also* Dr. Mechanick, Tr. 1/28/15 at p 44 ("not all defendants make good witnesses").

25. Based upon the record, the Court concludes that the government has proven, by a preponderance of the evidence, that the defendant does not suffer from a mental disease or defect that renders her incompetent to stand trial.

26. The record proves that that the defendant is able to understand the nature and consequences of the instant proceedings and can assist properly in her defense; therefore, the defendant is competent to stand trial.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_/s/ Joan E. Burnes_____
JOAN E. BURNES
FRANK R. COSTELLO, JR.
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Proposed Findings of Fact and Conclusions of Law to be electronically filed and

served by email  upon the following:

Gregory Miller, Esq.
Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
*Attorney for Defendant Dorothy June Brown*
Email: gregory.miller@dbr.com

_/s/ Joan Burnes_____
FRANK R. COSTELLO, JR.
Assistant United States Attorney

Date: February 20, 2015